# Chilton *v.* Ala. Gold Life Insurance Co.

*Bill in Equity for Foreclosure of Mortgage.*

1. *Non-resident defendants; decree pro confesso against.*—A decree against a non-resident defendant, who does not appear, and who is brought in by publication only, can not be supported on error, unless the record affirmatively shows a compliance with the statutory provisions and rules of practice authorizing it: there must be a proper order of publication, made and executed as required by the statute and the rules of practice, and a decree *pro confesso* based thereon, which states the facts on which it is founded; and the mere recitals of the final decree, as to the rendition of a decree *pro confesso*, are not sufficient to show the rendition and regularity of such decree *pro confesso*.

2. *Same; affidavit of non-residence.*—The affidavit as to the non-residence of the defendant must state whether, in the belief of the affiant, he is over or under the age of twenty-one years, or that his age is unknown (Rule No. 25; Code, p. 165); and the failure to comply with this rule is fatal to the regularity of the subsequent proceedings.

3. *Sale by register.*—In making a sale under a decree, the register is bound to conform to its terms; he can not sell on credit, when ordered to sell for cash; but, while he can not bind himself to wait on the purchaser any specified time, a mere delay of two days in collecting the money bid is not sufficient to avoid the sale, when no injury resulted from the delay.

APPEAL from the City Court of Montgomery, in Equity.

Heard before the Hon. THOS. M. ARRINGTON.

The bill in this case was filed on the 15th December, 1881, by the Alabama Gold Life Insurance Company, a domestic corporation, against Margaret L. Chilton and others; and sought to foreclose a mortgage on certain real estate in the city of Montgomery, known as the "Montgomery Female College" property. The mortgage, a copy of which was made an exhibit to the bill, was executed by Mrs. Lavinia T. Chilton, deceased; was dated the 6th July, 1872, and given to secure the payment of two promissory notes, together amounting to $2,600, of even date with the mortgage, and payable one and two years after date. Mrs. Chilton, the mortgagor, died in October, 1881, leaving Margaret L. Chilton, the defendant, her only child and heir at law. Samuel F. Rice, Mrs. A. B. Clitherall, Jas. A. Farley, and Mrs. M. A. Powell, as the holders of claims secured by junior mortgages in the order named, were also made defendants to the bill.

The original bill alleged, "that no letters of administration have ever been granted on the estate of the said Lavinia T.

Chilton, deceased, who died, in October last, intestate; and that said Margaret L. Chilton, her only child, is over the age of twenty-one years, is unmarried, and now resides, as orator is informed, believes, and so represents, in the town of Mansfield, in the State of Louisiana." The bill was not sworn to. An affidavit was filed in the cause, two days after the filing of the bill, which was made by the complainant's solicitor before a notary public, and in which he swore that, "from the best of his information and belief, the above named defendant, Margaret Chilton, resides in the town of Mansfield, in the State of Louisiana, and that an order of publication will be necessary to bring said defendant into court;" and on the filing of this affidavit, an order of publication, in due form, was made and entered against said defendant, requiring her to appear and answer by the 20th January next thereafter. A decree *pro confesso* seems to have been entered against all of the defendants on the 23d February, 1882, but it is nowhere copied into the transcript. Among the "Orders of Court," as copied, which appear to be the entries on the docket, is an entry, or memorandum, in these words: "Feb. 23d, 1882. Decree *pro confesso* against Samuel F. Rice, Jas. A. Farley, A. B. Clitherall, and M. A. Powell, on personal service; and against Margaret Chilton, on publication." In decrees subsequently entered in the cause it is recited that a decree *pro confesso* had been taken against Margaret Chilton; and in the note of submission, as entered by the register, the "decree *pro confesso* against Margaret Chilton" is mentioned as a part of the evidence submitted by the other defendants.

The decrees *pro confesso* against Rice, Farley, Mrs. Clitherall, and Mrs. Powell, were set aside, on motion, on a subsequent day of the February term, 1882; and answers were filed by each of them, setting up their respective claims. Before these decrees were set aside, an order of reference had been made, directing the register to state an account of the several mortgage debts; and the register's report was confirmed, without objection, after these answers were filed, and a decree of sale rendered; but this decree was afterwards set aside, on motion of the complainant, and leave granted to file an amended bill. The amended bill alleged that Mrs. Chilton's estate was insolvent, and that F. A. Hall had been appointed and qualified as her administrator; and brought in said administrator as a party defendant. An answer was then filed by said Hall as administrator, and a decree *pro confesso* on the amended bill was entered against Margaret Chilton; in which decree it is again recited, that a decree *pro confesso* on the original bill had been entered against her on the 23d February, 1882. Another reference of the matters of account was ordered, and the register's

report having been confirmed without objection, the cause was again submitted for decree on the pleadings and proof, and a decree of sale was made.

At the sale, which was ordered to be made for cash, as the register reported, the city of Montgomery became the purchaser, at the price of $6,000; and he further reported that the money was paid to him, on his demand, two days after the sale, including interest for the two days. On the morning of the day on which the money was so paid, written objections were filed by Mrs. Powell, in the office of the register, but in his absence, to his acceptance of the money, on the ground that the terms of sale had not been complied with; and the register reported these facts to the court. On this ground, Mrs. Powell objected to the confirmation of the sale, and asked a re-sale of the property; but the court overruled her objection, and confirmed the sale.

The appeal is sued out, in the name of all the defendants, by Margaret Chilton and M. A. Powell, and each of them assigns errors. The errors assigned by the former are, the final decree, the decrees ordering a reference and sale, the decree *pro confesso* on the amended bill, and the decree *pro confesso* on the original bill; and by the latter, the confirmation of the sale, and the overruling of the motion to set it aside.

W. S. THORINGTON, for appellants.—(1.) To authorize a final decree against a non-resident, on publication only, the record must show a strict compliance with the statutes and rules of practice.—*Cook v. Rogers*, 64 Ala. 406; *Paulling v. Creagh*, 63 Ala. 400; *Holly v. Bass*, 63 Ala. 391. The affidavit of non-residence was fatally defective, because it did not state the age of the non-resident (Rule No. 25; Code, 165); and its deficiencies can not be aided by the bill, which is not under oath; and even if the affidavit was sufficient, the failure of the record to show a regular decree *pro confesso* is a fatal defect. (2.) The sale ought to have been set aside, on the authority of *Williamson v. Berry*, 8 How U. S. 544; *Sauer v. Steinbauer*, 14 Wisc. 70.

E. P. MORRISSETT, *contra.*—Publication is intended as a substitute for personal service.—2 Ala. 420. Affidavit seems necessary, only as to infants.—*Erwin v. Ferguson*, 5 Ala. 167; *McGowan v. Br. Bank*, 7 Ala. 826; 12 Ala. 267. The statute (Code, § 3769) is mandatory, and was strictly followed; while the rule of practice is directory merely, and can not add to the requirements of the statute.

BRICKELL, C. J.—The making defendants to a suit in

[Chilton v. Ala. Gold Life Insurance Co.]

equity of parties residing without the State, upon whom process is not served, and who have only constructive notice by publication in a newspaper, is statutory : it is not according to the ordinary practice of the court, and not within its ordinary jurisdiction. A final decree rendered against a defendant not appearing, made a party only by publication under the statute and the rules which have been adopted to carry the statute into effect, can not be supported, when directly assailed on error, unless the record affirmatively shows a decree *pro confesso*, preceded by an appropriate order of publication, made and executed in conformity to the statute and rules of practice. The record must not only show the decree *pro confesso*, but it must also show the facts which render the decree regular, and authorize its rendition. Recitals in the final decree, that the decree *pro confesso* had been taken, or separately of facts which would authorize its rendition, can not supply its absence.—*Hartley v. Bloodgood*, 16 Ala. 233; *Hanson v. Patterson*, 17 Ala. 738. When a court of general jurisdiction is, in the exercise of its ordinary, accustomed powers, pursuing its ordinary remedies against parties voluntarily appearing, or who have been brought in by the service of personal process, all reasonable intendments and presumptions are, on error, indulged in support of the regularity of its proceedings and judgments. But, when it is in the exercise of special authority, derived wholly from statutes in derogation of the common law, on error, a reversal of its decree or judgment must follow, unless the record affirmatively discloses a strict conformity to the statute.—*Gunn v. Howell*, 27 Ala. 663.

There is, in the present record, an affidavit of the solicitor of the complainant, disclosing that the heir of the deceased mortgagor, an indispensable party defendant, resided without the State, at a place designated, in the State of Louisiana; and the affidavit is, in this particular, an affirmation of the truth of a distinct averment of the original bill. But, whether she was above or under the age of twenty-one years within the belief of the affiant, or whether to him her age was unknown, is not stated. The rule of practice (Rule 25; Code of 1876, p. 165) expressly requires, that the affidavit, upon which an order of publication as to a non-resident defendant is founded, must state "the belief of the affiant as to the age of the defendant, being over or under twenty-one years," or that the age is unknown. The reason of the requirement is plain : the proceedings which are to follow the execution of the order of publication are dependent upon the age of the defendant. If he be an adult, a decree *pro confesso* follows,—an admission of the truth of all facts well pleaded in the bill, justifying the rendition of a final decree against him without other evidence; but,

[Chilton v. Ala. Gold Life Insurance Co.]·

if he be not an adult—if an infant—a guardian *ad litem* for him must be appointed, whose duty it is to require evidence in support of the allegations of the bill. It is not difficult to observe the requirements of the statute and of the rules of practice in proceedings of this character, when the facts exist which authorize them. But, if it were, the courts are powerless to dispense with them, or to accept substitutes for them. If parties will not observe them, they imperil the validity of decrees or judgments founded upon them. There is not only this defect in the affidavit which is the foundation of the subsequent proceedings, but there is not in the record a decree *pro confesso* upon the original bill against the non-resident defendant. In its absence, a final decree against her could not be pronounced. There is a recital of the existence of such a decree found in different parts of the record; but the decree itself, showing upon its face all facts essential to its validity, if it ever had an existence, is not a part of the record. Its absence can not be supplied by recitals of its existence, nor by intendment or presumption which might be drawn from them, if the court was in the exercise of its ordinary, and not of statutory authority.

The register, in making a sale under the decree, was bound to conform to its terms. From it he derives his authority; and unless it was with the consent and approbation of all parties in interest, the terms of sale prescribed by the decree could not be varied. A sale for cash being decreed, he could not sell on credit; nor could the register, by agreement with the purchaser, delay the payment of the purchase-money for any specific period of time, though it may be very brief: he could not disable himself from demanding the consummation of the sale by the payment of the purchase-money, immediately upon the declaration that the offer or bid of the purchaser was accepted as the highest and best. But it is obvious that the two can not be instantaneous; that there will be an interval which must be consumed in the counting and payment of the purchase-money; and it must frequently occur that the purchaser, while having the money within reach, may not have it present at the place of sale. There can be no objection to an accommodation of the conduct of the officer making the sale, to necessities, or exigencies of this kind, which may arise. The sale would be a sale for cash, when the officer has the right of demanding immediate payment. In the present case, the sale was for cash, in precise conformity to the decree; and the delay of payment of the purchase-money for two days resulted from the failure of the register to demand it earlier; and the demand was not pressed immediately upon the acceptance of the bid, most probably, because for some length of time the money, if received, would lie idly in the registry of the court. There is

no complaint that the sale was not fairly and regularly con-
ducted, nor that the sum bid was not equal to the value of the
premises. It would weaken confidence in judicial sales, and
unnecessarily embarrass them, if, under these circumstances,
the sale had been set aside, because of the unintentional, acci-
dental delay for two days in the payment of the purchase-
money, working injury to no one.

The other questions presented by the assignment of errors
will not probably arise again under the same state of pleadings,
and it is not necessary to consider them. For the errors pointed
out, the decree must be reversed, and the cause remanded.

